[No. 11445.   Department One.   August 23, 1913.]

W. R. BOOTH, *Appellant*, v. SNOHOMISH COUNTY *et al.* *Respondents.*[1]

COUNTIES — CONTRACTS — LIMIT OF INDEBTEDNESS — COUNTY ROAD CONTRACTS—STATUTES—CONSTRUCTION. The county road law of 1913, Laws 1913, p. 476, providing for road funds and levies and limiting the expenditures in any year to eighty per cent of the fund against which the liability is incurred, unless there be cash in the fund, is not restricted to levies made by authority of the act, but limits all expenditures after the act took effect and applies to expenditures of monies raised by former levies, notwithstanding that prior indebtedness is provided for by separate levies and funds; in view of the repeal of all prior road laws, and the fact that the road funds provided for are practically the same as in the acts repealed; hence a road contract entered into after the act took effect, creating liability in excess of eighty per cent of the fund, without cash therein, is void.

CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS. An act is not unconstitutional as impairing the obligation of a contract where the contract was not entered into until after the act took effect, nor where there is nothing to indicate that the act applies to existing contracts.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered August 11, 1913, upon sustaining a demurrer to the complaint, dismissing an action for an injunction. Reversed.

*O. T. Webb,* for appellant.

*R. J. Faussett* and *Joseph H. Smith,* for respondents.

PARKER, J.—The plaintiff, a citizen and taxpayer of Snohomish county, seeks an injunction restraining that county and its officers from issuing and paying warrants for work done or to be done in pursuance of a contract entered into by the county commissioners on July 8, 1913, for road construction work in road district number two of that county, which contract he contends is illegal and void. The defendants de-

[1]Reported in 134 Pac. 686.

murred to the plaintiff's complaint for want of sufficient facts to constitute a cause of action. The demurrer was sustained by the court, when the plaintiff elected to stand upon his complaint and did not plead further. Thereupon judgment of dismissal was entered, from which the plaintiff has appealed to this court.

The ultimate question here to be determined is: Did the entering into the contract in question exceed the power of the board of county commissioners? It is contended by counsel for appellant that the contract is void and constitutes an unauthorized incurring of indebtedness, because the amount involved therein is in excess of eighty per cent of the amount of taxes levied against the property of the road district for the year 1913, there being at the time no cash on hand in the fund of the road district. The facts determinative of the question presented are stated in appellant's complaint as follows:

"That during the year 1912, there was levied for road district No. 2, the sum of $65,793.19 dollars; and that up to the 8th day of July, 1913, there had been expended the sum of $49,614.53 dollars. That on the said 8th day of July, 1913, the board of county commissioners entered into a contract for the expenditure of $5,596 dollars from said road district No. 2 fund. That said contract called for the expenditure of $3,158.64 dollars in excess of 80 per centum of the amount levied for the fiscal year of 1913 for District No. 2; and that at the time of entering said contract there was no cash on hand in the treasury in said district, nor had said commissioners passed a resolution declaring said expenditure an emergency caused by the happening of some unforseen catastrophe which could not have been anticipated at the time of making the levy in 1912."

This attempted incurring of indebtedness, it is insisted, is absolutely prohibited by the provisions of our new road and bridge revenue law of 1913 (Laws 1913, chap. 151, page 476), which, so far as we need here notice its provisions, is as follows:

"Section 1. For the purpose of raising revenue for the construction, maintenance and repair of county roads, bridges and wharves the board of county commissioners shall annually at the time of making the levy for general county purposes make additional levies as follows:

"(a) A tax of not more than four mills on the dollar on all taxable property in the county, which tax shall be kept in a fund known as the "General Road and Bridge Fund," and shall be kept separate and distinct from any other funds of the county.

"(b) A tax of not more than ten mills on the dollar on all taxable property in each road district previously established by the board, which tax shall be kept separate and distinct from other funds of the county in a fund for each road district. . . .

"Sec. 2. The expenditures from the general road and bridge fund shall be made only for the purpose of constructing, maintaining and repairing such county roads, bridges and wharves which are or will be main thoroughfares or lines of travel for all the inhabitants of the county, and for the purpose of purchasing operating and maintaining machinery, quarries and gravel pits used in such construction, maintenance and repair.

"Sec. 3. The expenditures from the road district funds shall be made only for the purpose of constructing, maintaining and repairing such roads, bridges and wharves as are situated within the road district and which shall be in the nature of branch roads or feeders to the main highways passing through the district, and for the further purpose of purchasing, operating and maintaining machinery and equipment used in such construction, maintenance and repair within the district. . . .

"Sec. 5. The board of county commissioners shall have no power to create a debt or incur any liability, or in any way bind the county for any of the purposes mentioned in sections 2 and 3 hereof, for any amount in excess of eighty per centum of the amount levied in the fiscal year for either the general road and bridge fund or any of the district road and bridge funds, unless after deducting such eighty per centum there is cash in the particular fund against which the liability is incurred: *Provided, however,* That in case of an unforseen catastrophe which could not have been anticipated

at the time the estimates were computed for such fiscal year, the board of county commissioners shall have authority, after passing a resolution setting out the facts, to issue warrants which, together with the cash on hand, will be sufficient to take care of the particular case, but the amount of such warrant indebtedness shall be included in the levy for the fund against which such warrants are drawn made for the next succeeding fiscal year. All contracts, authorizations, allowances, payments and liabilities to pay, made or attempted to be made in violation of this act shall be void and shall never be the foundation or basis of a claim against a county.  .  .

"Sec. 7. In any of the counties which, on the first day of January, 1913, had a warrant indebtedness in any of the road and bridge funds there is hereby created a special indebtedness fund which shall be designated as follows: 'Special General Road and Bridge Indebtedness Fund, . . . . . . . . County,' and 'Special District Road and Bridge Fund of District Number . . . . . . . . . . . . . . . . County.' All warrants outstanding on the first of January, 1913, shall be transferred to and paid out of the special indebtedness funds hereby created. All uncollected taxes levied for the year 1912 and prior years, either for general road and bridge purposes or district road and bridge purposes, shall be credited as they are collected to the special indebtedness fund or the fund for which such taxes were levied."

Section 8 provides for the county commissioners making a special levy in the year 1913, and following years, as may be necessary, to pay warrants outstanding against the road and bridge funds on January 1st, 1913, and evidently contemplates that the moneys raised by the levies authorized by § 1 shall not be so used. Section 9 expressly repeals the whole of the then existing road and bridge revenue law, being Rem. & Bal. Code, §§ 5590-5593 (P. C. 441 §§ 131-137). So this is an entire new law purporting to cover the whole subject covered by the old law, no part of the old law being in force on July 8, 1913, when the contract here involved was entered into by the county commissioners.

A mere casual reading of § 5 above quoted seems to conclusively answer the contentions of counsel for respondents.

They concede that the language of § 5 standing alone would be conclusive against them, but insist that the prohibition therein has no application to the incurring of such indebtedness prior to the year 1914, when the taxes levied for that year, in the fall of 1913, will be in process of collection. The argument seems to be that this 1913 law, when all of its provisions are considered, evidences a legislative intent to leave the pledging of uncollected taxes for 1913 and prior years unrestrained by the provisions of § 5 above quoted. It is true we find in this law a legislative intent to deal with prior indebtedness separately from the indebtedness thereafter to be incurred, and to care for each by separate levies, but that does not change the fact that this 1913 law went into force on June 12, 1913, effectually repealing the former law, and thus became the standard by which the validity of all road contracts and expenditures should thereafter be measured. The fact that the law seems to express an evident intention to deal with prior and future expenditures separately, and makes provisions therefor by separate levies, does not argue, it seems to us, that the limitations upon road and bridge expenditures, following the taking effect of this law, should not all be limited as provided in § 5 thereof.

Our attention is particularly called to the prohibitive language of § 5, which refers to "the purposes mentioned in sections 2 and 3 hereof," from which it is argued that the prohibition only refers to expenditures to be made of monies raised by levies made by authority of this law, and not to monies from former levied taxes. Sections 2 and 3 are not materially different from Rem. & Bal. Code, §§ 5590, 5591 (P. C. 441 §§ 131, 133), of the old law in prescribing the purposes for which road and bridge revenues may be expended. The provision is manifestly against incurring such an obligation against the county or district, and is the same in effect as if the purpose of the expenditure had been specifically described in § 5 instead of referring back to §§ 2 and 3, which, as we have noticed, is in substance the same as

the old law, though the old law had no limitation of indebted-
ness provision. We are constrained to hold that this pro-
hibition is applicable to all expenditures sought to be made
after the taking effect of this law.

Some contention is sought to be made that this construc-
tion of the law might render it unconstitutional, in that it
might be held to impair the obligation of contracts. It is
manifest that that argument can have no application to this
contract, since it was entered into after the taking effect of
the law, and we are unable to see that the law assumes to
affect any prior contracts. Some other arguments are ad-
vanced which we are unable to see have to do with anything
other than the policy of the law and the seeming confusion
which may follow in its practical application. These ques-
tions, however, cannot affect the construction of the plain
language of § 5, which we think must be given the meaning
we have attributed to it. We are of the opinion that the
learned trial court erred in sustaining respondents' demurrer
to appellant's complaint, and that the same states facts
which, if true, entitle him to the relief prayed for.

The judgment of dismissal is reversed, and the cause re-
manded to the trial court with instructions to overrule re-
spondents' demurrer, and for such further proceedings as
are not inconsistent with the views we have here expressed.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.